# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WORLDWIDE AIRCRAFT SERVICES INC.,**
d/b/a JET ICU, a Florida corporation,

      Plaintiff,

v.                            Case No. 8:24-cv-02156-WFJ-LSG

**Secretary of Health and Human Services** and
**Administrator for the Centers for Medicare and
Medicaid Services,**[1]

      Defendants.
_____/

## <u>ORDER</u>

Before the Court is the Secretary of the United States Department of Health and Human Services ("HHS") and Administrator for the Centers for Medicare and Medicaid Services' ("CMMS") Motion to Dismiss the Complaint filed by Plaintiff Worldwide Aircraft Services, Inc. d/b/a Jet ICU ("Jet ICU" or the "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 18. Jet ICU has responded in opposition. Dkt. 19. As explained below, Defendants' motion to dismiss is granted.

---

[1] Given the change in presidential administration, the caption was changed pursuant to Fed. R. Civ. P. 17(d) and 25(d). Because Senate confirmations for HHS and CMMS are currently pending, the Court requests the caption be updated to reflect any changes pursuant to the same rules once the confirmations are complete.

## BACKGROUND

### I.    The No Surprises Act

During a medical emergency, there is little choice in how a patient will get to a hospital. In some cases, the patient receives expensive transportation from a provider—like an air ambulance—who is outside the patient's insurance network. When the bill comes due, the patient's insurance and out-of-network provider may not agree on a fair reimbursement for the cost of services. In 2020, Congress attempted to resolve this problem with the No Surprises Act (the "NSA"), which created a uniform reimbursement process, including binding arbitration. *See* 42 U.S.C. § 300gg-111.

As relevant here, the NSA establishes a dispute resolution system for when healthcare providers and insurers dispute surprise medical bills. 42 U.S.C. § 300gg-111(c)(1)–(5). This system is known as the Independent Dispute Resolution ("IDR") process and generally has four steps: [1] provider and the insurer negotiate the price for the service, 42 U.S.C. § 300gg-111(c)(1)(A); [2] if these negotiations fail, the provider and insurer have four days to begin the IDR process, *id.* § 300gg-111(c)(1)(B); [3] a certified IDR entity is selected by either the parties or the Department of HHS, *id.* § 300gg-111(c)(4); and [4] the certified IDR entity determines whether the parties' dispute is eligible for IDR and then decides the amount owed to the provider by the insurer, *id.* § 300gg-111(c)(5).

The same four step process applies to air ambulance insurance claims. *See id.* § 300gg-112. The air ambulance company can negotiate with the insurance provider for payment, *id.* § 300gg-112(b)(1)(A), and if the negotiations fail, the parties go to the same IDR process for "baseball style" arbitration. *Id.* § 300gg-112(b)(1)(B); *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1079–80 (M.D. Fla. 2023), *appeal dismissed*, 2024 WL 3402119 (11th Cir. May 30, 2024).

Importantly, the NSA's protections for patients only extend to services and items covered under the terms of a patient's health insurance plan. *See* 42 U.S.C. § 300gg-112(a) ("In the case of a participant, beneficiary, or enrollee who is in a group health plan or group or individual health insurance coverage offered by a health insurance issuer and who receives air ambulance services from a nonparticipating provider . . . with respect to such plan or coverage, if *such services would be covered if provided by a participating provider . . . with respect to such plan or coverage. . .*" (emphasis added)); 45 C.F.R. § 149.130(a) ("If a group health plan, or a health insurance issuer offering group or individual health insurance coverage, *provides or covers any benefits for air ambulance services*, the plan or issuer *must cover such services from a nonparticipating provider* of air ambulance services . . ." (emphasis added)).

## II.    Certified IDR Entity Determinations

The NSA charges the Departments of HHS, Labor, and Treasury (the "Departments") with establishing regulations to flesh out the dispute resolution process. *See* 42 U.S.C. § 300gg-112(b)(2)(A). Specifically, the Departments "shall establish by regulation," no later than December 27, 2021, "one independent dispute resolution process . . . under which" an independent arbitrator, known in the NSA as a certified IDR entity ("CIDRE"), "determines, . . . in accordance with the succeeding provisions of this subsection, the amount of payment under the plan or coverage for such services furnished by such provider." *Id.*; *see also* 86 Fed. Reg. at 36,883 ("With respect to air ambulance services furnished by nonparticipating providers . . . [insurers] must comply with the requirements regarding cost sharing, payment amounts, and processes for resolving billing disputes . . . , if such services would be covered if provided by a participating provider with respect to such plan or coverage.").

The subsequent regulations promulgated by the Departments require the insurer to first determine whether the services rendered are covered under a patient's healthcare plan "and, if the services are covered, send to the provider an initial payment or a notice of denial of payment." 45 C.F.R. § 149.130(b)(4)(i).

If the out-of-network air ambulance provider disagrees with the insurer, the provider can send a notice of IDR initiation to the HHS Secretary. 42 U.S.C. §

300gg-112(b)(1)(B) (requiring the initiating party to submit to the other party and the Secretary a notification "containing such information as specified by the Secretary."). In the notice of IDR initiation, the parties must provide information sufficient to show that the item or service in dispute is a "qualified IDR item or service." *See* 45 C.F.R. § 149.510(b)(2)(iii)(A)(1). Indeed, CIDREs are required to determine whether the air transportation was a "qualified IDR air ambulance service" because an air ambulance provider can only participate in the federal IDR process if the patient's plan covers such services. *See* 42 U.S.C. § 300gg-112(b)(5)(A) (limiting IDR payment determinations to "a determination for qualified IDR ambulance services," which are services that would be covered if provided by a participating provider with respect to such plan or coverage); 45 C.F.R. § 149.510(c)(1)(v) ("[T]he certified IDR entity selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies.").

In sum, before an air ambulance provider can take advantage of the NSA's federal IDR process, the transportation must be a service that would be ordinarily covered by the patient's healthcare plan. If the CIDRE determines air ambulance transportation is not a service that "would be covered if provided by a participating provider," then the air ambulance provider cannot utilize the federal IDR process to resolve its payment dispute. *See* 42 U.S.C. § 300gg-112(a).

5

### III.    The Instant Litigation

This case stems from two payment disputes that Jet ICU initiated in 2024. Jet ICU alleges that on or about June 20, 2024, it initiated the IDR process or a payment dispute with insurer GeoBlue. Dkt. 1 ¶ 20. On July 10, 2024, the CIDRE issued a notice entitled "Dispute not eligible for the Federal IDR Process," concluding that the dispute was not eligible for the IDR process because "[p]er the Non-Initiating Party, services for this claim were not covered by plan" and closed the dispute. Dkt. 1-2 at 2. On or about July 29, 2024, Jet ICU initiated IDR for a different payment dispute with insurer United Medical Resources ("UMR"). Dkt. 1 ¶ 22. On August 16, 2024, the CIDRE issued a notice containing the email subject line "The Federal IDR Process is Not Applicable to This Dispute," finding "that the dispute was not eligible to be resolved using the Federal IDR process" because "the service was not a covered procedure under the individual['s] plan for claim number 24052008950" and closed the dispute. Dkt. 1-3 at 2.

On September 12, 2024, Plaintiff filed suit seeking injunctive and declaratory relief to prohibit Defendants from "enforcing or applying any policy permitting arbitrators to decide IDR disputes on any basis other than selecting one of the two offers submitted and considering only the statutory factors set forth in 42 U.S.C. § 300gg-(c)(5), 42 U.S.C. § 300gg-112(b)(5)." Dkt. 1 at 13. Jet ICU argues such relief should be granted since the CIDREs' decisions to close Plaintiff's IDR payment

disputes without making a payment determination indicate Defendants' actions were arbitrary and capricious and in excess of the statutory authority granted by the NSA. *Id.* ¶¶ 34, 35. Further, Plaintiff contends that Defendants erred by adopting, without notice and comment rulemaking, a "practice and policy" of permitting CIDREs to dismiss or reject IDR arbitration requests because the disputes involve non-covered items or services. *Id.* ¶ 37. Jet ICU claims it was injured by this "policy and practice" because its "statutory right(s) to IDR arbitration were denied" and, therefore, "did not receive the IDR arbitration award in some amount (either its offer or the insurer's)." *Id.* ¶ 38.

In response, Defendants filed the instant motion to dismiss, arguing that (1) the NSA "prohibits CIDREs from issuing payment determinations in disputes that involve non-covered services," (2) Defendants' "policies and practices pursuant to this mandate are not arbitrary and capricious and do not run afoul of notice-and-comment rulemaking requirements," and (3) this Court cannot "issue complete relief as to Jet ICU's claims against only one Department, HHS and its subagency, CM[M]S." Dkt. 18 at 11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief in order to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the Plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim is facially plausible when the court can draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662. However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

However, when a complaint seeks review of agency action under the Administrative Procedure Act (the "APA"), "[t]he entire case on review is a question of law," and the reviewing district court sits not as a finder of fact but "as an appellate court." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (citation omitted). A plaintiff's "complaint, properly read, actually presents

no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Id.* In other words, where the review concerns whether agency action was arbitrary or capricious under the APA, "the sufficiency of the complaint is the question on the merits, and there is no real distinction . . . between the question presented on a 12(b)(6) motion and a motion for summary judgment." *Id.*; *O'Neill v. Cate*, 647 F. Supp. 3d 1299, 1305 (S.D. Fla. 2022) (discussing the scope of review of agency action under Rule 12(b)(6)).

## DISCUSSION

Based on a careful review of the pleadings, the Court grants Defendants' motion to dismiss the Complaint. As discussed below, Jet ICU's claims for relief under the NSA fail as a matter of law because the two payment disputes at issue were not eligible for the IDR process due to being non-covered services. Additionally, Plaintiff fails to properly state a claim for relief under the APA.

## I.    Failure to State a Claim for Relief Under 42 U.S.C. § 300gg-112

Defendants argue, "Jet ICU fails to state a claim upon which relief can be granted because the No Surprises Act does not permit CIDREs to render payment determinations in ineligible disputes, such as those involving air ambulance services that are not covered by a patient's plan." Dkt. 18 at 11. The Court agrees.

The NSA's opening provision in the air ambulance section makes it clear that when a patient receives "air ambulance services from a nonparticipating provider,"

the NSA's protections only apply "if such services would be covered if provided by a participating provider . . . with respect to such plan or coverage." 42 U.S.C. § 300gg-112(a). Further, the NSA limits a CIDRE's payment determination to "qualified IDR ambulance services," which is defined as services that "would be covered if provided by a participating provider . . . with respect to such plan or coverage." 42 U.S.C. §§ 300gg-112(b)(5)(A), 300gg-112(a).

Here, even when accepting all of Plaintiff's factual assertions as true, the Complaint still fails to state a claim as a matter of law. Both exhibits attached to the Complaint explain that Jet ICU could not participate in the federal IDR process because the CIDREs determined that the patients' plans did not cover the air ambulance services rendered. *See* Dkts. 1-2 & 1-3. As discussed above, 42 U.S.C. § 300gg-112(a) clearly states the air ambulance transportation provided by a nonparticipating provider must be a service that would be ordinarily covered by a participating provider under the patient's health insurance. This threshold determination of whether the air transportation is covered under a patient's health insurance is reflected in HHS regulations stating the health insurance issuer "must cover such services from a nonparticipating provider of air ambulance services" if the insurance coverage "provides or covers any benefits for air ambulance services." 45 C.F.R. § 149.130(a); *see* 45 C.F.R. § 149.510(c)(1)(v) ("the certified IDR entity

selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies.").

As such, taking Plaintiff's attached exhibits as true, Jet ICU's claim must fail as a matter of law because the CIDREs in both disputes determined the patients' healthcare plans did not cover the services Jet ICU provided. As the Supreme Court has recently articulated, "[a]dministrative agencies are creatures of statute" that only possess "the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 117 (2022). Defendants do not possess the authority to allow Jet ICU to use the federal IDR process when it fails the statutory requirements in 42 U.S.C. § 300gg-112.

However, Jet ICU cites 42 U.S.C. § 300gg-111(c)(5) in the Complaint and argues the CIDREs' decision to close Plaintiff's two disputes is at odds with the NSA's instruction that CIDREs only select one of the offers submitted by the parties in the IDR process. Dkt. 1 ¶¶ 31, 32; *see* 42 U.S.C. § 300gg-112(b)(5)(A)(i) ("[T]he certified IDR entity shall—(i) taking into account the considerations specified in subparagraph (C), select one of the offers submitted under subparagraph (B) to be the amount of payment for such services . . ."). In other words, Plaintiff contends CIDREs cannot make coverage determinations about whether a non-covered claim is excluded from the federal IDR process. Instead, the CIDREs can only "select one of the offers submitted" by the air ambulance provider or the health insurance

company. 42 U.S.C. § 300gg-112(b)(5)(A). However, this Court need not accept Plaintiff's legal conclusion as true. *See Iqbal*, 556 U.S. at 678.

Jet ICU's reading of the statute glosses over the NSA's threshold coverage requirement. Only if air ambulance transportation is covered "with respect to such plan or coverage" are healthcare insurers required to transmit "an initial payment or notice of denial of payment" to the air ambulance provider. 42 U.S.C. § 300gg-112(a)(3); *see also* 45 C.F.R. § 149.130(b)(4)(i) ("The plan or issuer must . . . determine whether the services are covered under the plan or coverage and, if the services are covered, send to the provider an initial payment or a notice of denial of payment."). This 30-calendar-day period for initial payment or notice of denial of payment, followed by open negotiation, is only available to an air ambulance provider when "payment is required to be made by the plan or coverage pursuant to subsection (a)(3)," referring to § 300gg-112(a)(3). 42 U.S.C. § 300gg-112(b)(1)(A). Consequently, open negotiation under the NSA—an initial step before initiation of the federal IDR process—is not available to Jet ICU since the patients' healthcare plans never covered its air transportation services. *See* Dkts. 1-2 & 1-3; 42 U.S.C. § 300gg-112(b)(1)(B).

Regardless of whether the insurer issues an initial payment or notice of denial, an air ambulance provider can still submit an IDR initiation claim. The appointed CIDRE must also comply with the NSA's threshold coverage requirement. Indeed,

the arbitrator "must review the information submitted in the notice of IDR initiation" and reject the initiation claim if the federal IDR process does not apply. 45 C.F.R. § 149.510(c)(1)(v) ("[T]he certified IDR entity selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies" and "[i]f the Federal IDR process does not apply, the certified IDR entity must notify the Secretary and the parties within 3 business days of making that determination."). Put simply, Plaintiff's invocation of 42 U.S.C. § 300gg-111(c)(5) ignores the threshold coverage requirement that must be met before the CIDRE chooses one of the payment options submitted. Plaintiff's claims fail as a matter of law.[2]

## II.   Defendants' Actions were Not Arbitrary and Capricious

Jet ICU argues the CIDREs' decisions to close Plaintiff's IDR payment disputes without making a payment determination based on one of the offers submitted was arbitrary and capricious, an abuse of discretion, and in excess of the statutory authority granted by the NSA. Dkt. 1 ¶ 35. Defendants respond that

---

[2] Additionally, Jet ICU does not fall under the NSA's statutorily defined term of a "nonparticipating provider." As discussed above, 42 U.S.C. § 300gg-112(a) only applies in cases where a patient receives "air ambulance services from a *nonparticipating* provider" and "such services would be covered if provided by a participating provider" under the patient's healthcare plan. 42 U.S.C. § 300gg-112(a) (emphasis added). Congress has explicitly defined "nonparticipating provider" to mean "a physician or other health care provider . . . who does not have a contractual relationship with the plan or issuer, respectively, *for furnishing such item or service under the* [patient's] *plan or coverage*." 42 U.S.C.A. § 300gg-111(a)(3)(G)(i) (emphasis added). Put differently, an air ambulance provider only qualifies as a "nonparticipating provider" if it does not have a contractual relationship with the health insurance issuer *and* air ambulance transportation is a service covered by the patient's plan. While Jet ICU did not have a contractual relationship with GeoBlue and UMR, the CIDREs properly determined the patients' healthcare plans never covered Jet ICU's services in the first place. Dkts. 1-2 & 1-3.

Plaintiff has not explained how the Departments have "failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Dkt. 18 at 16. The Court agrees with Defendants.

Under the APA, any agency's rule must be "set aside" if it is "in excess of statutory . . . authority" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C). In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overturned *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) and stated that "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency," the reviewing court fulfills its role "by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decision-making within those boundaries." *Id.* at 395 (citations omitted).

Regarding reasoned decision-making, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (citation omitted). Judicial review on the arbitrary and capricious standard is "deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* Although the

reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," courts are to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (quotations omitted).

Here, Plaintiff's Complaint only contains a "formulaic recitation of the elements of a cause of action [that] will not do." *Twombly*, 550 U.S. at 555. In one sentence in the Complaint, Plaintiff simply recites the text of the APA to claim Defendants' actions were "arbitrary and capricious" because the CIDREs denied their two claims. *See* Dkt. 1 ¶ 35. Notably absent in the Complaint is any factual allegations about how Defendants "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Indeed, much of Plaintiff's Complaint is nothing "more than labels and conclusions" about how Plaintiff believes the NSA should be interpreted, and how Defendants failed to follow Plaintiff's reading of the statute. *Twombly*, 550 U.S. at 555; *see* Dkt. 1 ¶¶ 29-39.

Further, Plaintiff's Complaint fails to supply any factual allegations for why Defendants' promulgation of regulations and guidance pursuant to the NSA's statutory mandate is not inherently "reasonable and reasonably explained."

15

*Prometheus Radio Project*, 592 U.S. at 423. Plaintiff's Complaint only alleges that "allowing arbitrators to close the requests without making a determination based on either offer submitted" means Defendants "acted in excess of the authority granted to [them] under the NSA." Dkt. 1 ¶ 34. This conclusory statement is a legal conclusion that the Court need not accept as true. *Iqbal*, 556 U.S. at 678. As such, Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff's response, however, heavily relies on the Fifth Circuit's recent decision in *Texas Med. Ass'n v. United States Dep't of Health & Human Services*, 110 F.4th 762 (5th Cir. 2024) ("*TMA II*") to argue "Defendants' IDR process has already been largely vacated for violating the Act." [3] Dkt. 19 at 5. Jet ICU's reliance on *TMA II* is misplaced.

In *TMA II*, the plaintiffs were challenging HHS's final rule that set out three procedures CIDREs must follow when making payment determinations. *TMA II*, 110 F.4th at 770. The NSA already lays out several factors that the CIDREs "shall consider" in determining the proper out-of-network rate. *Id.* at 768 (citing 42 U.S.C. § 300gg-111(c)(5)(C)). The Circuit Court found that HHS's final rule added "three extrastatutory requirements" that forced CIDREs to impermissibly weigh the "qualifying payment amount" factor first and more heavily than the other factors in

---

[3] *TMA II* affirmed the district court's decision to vacate the following C.F.R. provisions: (1) the word "then" in 45 C.F.R.§ 149.510(c)(4)(iii)(B); the entirety of § 149.510(c)(4)(iii)(E); the entirety of § 149.510(c)(4)(iv); the final sentence of § 149.510(c)(4)(vi)(B); and the entirety of § 149.520(b)(3). *TMA II*, 110 F.4th at 780.

42 U.S.C. § 300gg-111(c)(5)(C)(ii). *Id* at 776–79. The appeals court concluded that "nothing in the [NSA] instructs arbitrators to weigh any one factor or circumstance more heavily than the others, nor does the Act authorize the Departments to superimpose regulatory rules on the clear statutory mandate." *Id.* at 774–75.

Jet ICU's APA challenge is undoubtedly distinct from the challenges raised in *TMA II*. As an initial matter, Jet ICU is challenging a different provision in the Code of Federal Regulations. Unlike the plaintiffs in *TMA II,* who objected to the "extrastatutory requirements" in 45 C.F.R.§ 149.510(c)(4), Plaintiff's Complaint only challenges the CIDREs' ability to make a threshold determination about whether an air ambulance transportation is a non-covered service in 45 C.F.R. § 149.510(c)(1)(v). *See* Dkt. 1 ¶¶ 35-37.[4] Moreover, *TMA II* is also inapposite because the appeals court was dealing with "extrastatutory requirement[s]" that "distorted the statutory scheme," whereas here, the promulgated regulations at issue simply reflect the statutory coverage requirement in the NSA. *TMA II*, 110 F.4th at 777; *see* 42 U.S.C. § 300gg-112(a); 45 C.F.R. § 149.130(a); 45 C.F.R. § 149.510(c)(1)(v).

Next, relying on *TMA II*, Jet ICU's response argues "whether a service is covered by a particular plan" is not a factor enumerated in 42 U.S.C. § 300gg-112(b)(5)(C), which means CIDREs are never permitted to consider whether a

---

[4] While Plaintiff does not cite 45 C.F.R. § 149.510(c)(1)(v) in the Complaint, Plaintiff makes multiple references to the CIDREs' authority to make coverage determinations (*see* Dkt. 1 ¶¶ 34-37) which is given to CIDREs in 45 C.F.R. § 149.510(c)(1)(v).

patient's plan covers a service. Dkt. 19 at 4. Plaintiff fails to consider that the CIDREs' threshold obligation to ensure disputes involve only "qualified IDR ambulance services" is not a factor to be weighed. Rather, it is a requirement that must be met *before* weighing the factors in subparagraph (b)(5)(C) to select one of the offers submitted. 42 U.S.C. § 300gg-112(b)(5)(A) ("[W]ith respect to a determination for qualified IDR ambulance services. . ."); *see also* 45 C.F.R. § 149.510(c)(1)(v) ("[T]he certified IDR entity selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies."). In other words, Plaintiff's challenge to the CIDREs' coverage determinations completely differs from *TMA II*'s analysis considering the impermissible factor weighing in 45 C.F.R.§ 149.510(c)(4). As required by the NSA, the CIDREs in Jet ICU's two disputes properly denied Plaintiff's request for IDR due to a lack of coverage. Dkts. 1-2 & 1-3; *see* 42 U.S.C. § 300gg-112(a) (noting the NSA protections only apply to a patient "who receives air ambulance services from a nonparticipating provider . . . if *such services would be covered if provided by a participating provider . . . with respect to such plan or coverage*" (emphasis added)).

### III.    Notice and Comment Claim

Plaintiff alleges that Defendants' policies instructing CIDREs to not consider disputes involving non-covered items and services violated the APA's notice and comment requirements. Dkt. 1 ¶ 37. Defendants respond that its policies and

18

guidance to CIDREs are "interpretive rules" that do not require a notice and comment period under the APA and that the policies "merely restate obligations already imposed by a statute and regulations." Dkt. 18 at 18.

Unlike a legislative rule for which notice and comment rulemaking is required, an interpretative rule "typically reflects an agency's construction of a statute that has been entrusted to the agency to administer" and does not modify or add to a legal norm "based on the agency's own authority." *Warshauer v. Solis,* 577 F.3d 1330, 1337 (11th Cir. 2009) (quoting *Syncor Int'l Corp. v. Shalala,* 127 F.3d 90, 94–95 (D.C.Cir.1997)). Conversely, a legislative rule creates new law, rights, or duties. *Id.*

Here, the Court cannot determine whether certain policies instructing CIDREs are legislative or interpretative rules because Plaintiff fails to cite a single guidance letter or document in its Complaint. *See* Dkt. 1. Instead, Plaintiff's Complaint only makes vague allegations that "there is some policy of general application being applied or enforced" because its two IDR disputes were closed by the CIDREs for involving non-covered services.  Dkt. 1 ¶¶ 33, 36, 44. Plaintiff must specifically identify and cite which "policy of general application" should have been subject to notice and comment rulemaking. As pled, Plaintiff's challenge under the APA is deficient and fails to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.  Defendant HHS and CMMS's Motion to Dismiss, Dkt. 18, is **GRANTED.**

2.  Plaintiff Jet ICU's motion for a hearing, Dkt. 23, is **DENIED as moot.**

**DONE AND ORDERED** in Tampa, Florida, on February 4, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**